# IN THE COURT OF APPEALS OF IOWA

No. 24-0042
Filed July 23, 2025

**AARON LEE STINDE,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Scott County, John Telleen, Judge.

Aaron Lee Stinde appeals from the district court's denial of his application for postconviction relief, arguing he received ineffective assistance of trial counsel. **AFFIRMED.**

R.E. Breckenridge of Breckenridge Law P.C., Ottumwa, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered without oral argument by Schumacher, P.J., Ahlers, J., and Carr, S.J.* Telleen, S.J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**CARR, Senior Judge.**

Aaron Lee Stinde appeals from the district court's denial of his application for postconviction relief (PCR).  Stinde was convicted of first-degree kidnapping, three counts of second-degree sexual abuse, domestic abuse assault by strangulation with bodily injury, and operating a motor vehicle without consent in 2015.  Stinde argues on appeal that he was denied a fair trial due to ineffective assistance of trial counsel.  Although this is Stinde's first PCR application, we found the record adequate on direct appeal to address an ineffective assistance claim and concluded his trial counsel was effective.  On appeal from denial of Stinde's PCR, we now again conclude his counsel was effective and affirm the district court.

## I.  Background Facts and Proceedings

We described the facts leading to Stinde's charges in our opinion in his direct appeal from conviction:

> Twenty-year-old A. and Stinde became acquainted through work and began dating, which developed into an intimate relationship.  They lived together off and on for about three months.  They were not living together on January 15, 2014, but at about 9:30 p.m., they went to the Quad City Inn for the purpose of having consensual sex.  They took A.'s car, and she paid for the room rental.  Stinde purchased an alcoholic beverage, and A. took a few sips.  The two participated in consensual oral and vaginal sex.  A. showered, lay down on the bed, and went to sleep for one-and-a-half to two hours.
>
> Stinde woke A. up and started yelling at her about Facebook messages she had allegedly sent to a third party assumed to be a boyfriend.  Stinde struck A. in the face, causing a nose bleed.  He got on top of her in the bed, choked her, and called her a "whore" and "bitch."  When A. went to the bathroom, Stinde followed and, over her objection, forced her to take off her pants and give him oral sex.  He then bent her over the sink and penetrated her both vaginally and anally.  She made her way to the bed where, again, Stinde forced oral sex on her.  She went to the door and attempted

to leave, but Stinde pulled her back into the room, threw her to the floor, and choked her.

A. testified that over the course of the evening, Stinde choked her to the point of unconsciousness, kicked her, and hit her in the side of the head hard enough to make her dizzy. At different times during the ordeal, she lost fecal matter as a result of forced anal sex and vomited as a result of the forced oral sex. She pleaded with Stinde to stop, but she testified the ordeal went on for hours. Eventually, Stinde told A. that she could leave if she paid him one hundred dollars for his suffering for having cheated on him.

A. managed to clothe herself, but Stinde told her to get away from the door and give him oral sex one more time. A. retrieved her keys, made it to the outside railing of the motel balcony, and hung on as Stinde pulled her hair and smacked her in the face. She let go of the keys, managed to break loose from Stinde, and ran for the motel lobby. The motel receptionist called the police. Stinde ran to A.'s car and left in it.

Officer Gavin Tigges testified he was called to the Quad City Inn at about 6:30 a.m. on January 16 and first made contact with A. in an ambulance. A. was taken to a hospital, where law enforcement and hospital personnel interviewed her and took pictures of her bruises. A. initially reported she had been sexually assaulted but did not advise either law enforcement or medical personnel that the encounter had begun with consensual sex.

The motel room, including the bathroom and the outside railing that A. had clung to, was examined and pictures were taken. Blood spots, towels, and the furniture disarray were consistent with A.'s testimony. Multiple samples of material were tested for DNA. Two stains taken from A.'s pants contained both seminal fluid and sperm. DNA testing revealed the sperm fraction of the stain matched the DNA profile of Stinde and the probability of finding the same profile in randomly chosen individuals would be one out of one hundred billion.

*State v. Stinde*, No. 15-1554, 2016 WL 4802412, at *1 (Iowa Ct. App. Sept. 14, 2016). Stinde was charged with first-degree kidnapping, three counts of second-degree sexual abuse, domestic abuse assault by strangulation with bodily injury, and operating a motor vehicle without consent. He waived his right to a jury trial in writing, "which was buttressed by an in-court colloquy." *Id.* at *2.

The matter proceeded to trial. Stinde did not testify, but a video of his police interview was shown. During the interview, Stinde claimed the following: He had wanted to break up with A., but they agreed to go to the hotel for sex. The evening began with consensual sex and drinking, but A. received a telephone call from another boyfriend, prompting him to try to leave, but A. would not let him. As she physically resisted Stinde's departure, an altercation developed.

Stinde moved for acquittal at the close of the State's case, but his motion was overruled. The trial court found Stinde's statements were not credible, and Stinde was found guilty of all charges.

*Id.* We affirmed Stinde's convictions on direct appeal, finding "[t]he uncontroverted evidence of [his] guilt was overwhelming" and no prejudice was established on his claims of ineffective assistance of counsel. *Id.* at *4–5.

In December 2016, Stinde applied for PCR. Stinde alleged several claims of ineffective assistance of counsel. In October 2017, he filed a recast application for PCR with additional ineffective assistance claims. In December 2017, Stinde filed a second recast application, raising further claims against trial counsel. Stinde then filed a third recast application in December 2022 with more claims. The PCR trial was held that same month, and the district court later entered an order denying all claims.

Stinde now appeals.

## II. Standard of Review

"We ordinarily review PCR rulings for correction of errors at law." *Brooks v. State*, 975 N.W.2d 444, 445 (Iowa Ct. App. 2022). "However, when the applicant asserts claims of a constitutional nature, our review is de novo." *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). So claims of ineffective assistance of counsel

are reviewed de novo. *Id.* In conducting our de novo review, "we give weight to the lower court's findings concerning witness credibility." *Id.*

### III. Discussion

On appeal, Stinde argues his trial counsel was ineffective in the following ways: (1) failing "to ensure that the plea offer was properly communicated to [Stinde] and a recommendation made," (2) permitting Stinde "to waive his right to trial by jury," and (3) failing "to obtain and use the mental health and psychological records of the victim."

To establish ineffective assistance of counsel, Stinde must show (1) counsel's performance fell below objectively reasonable standards and (2) if counsel had acted differently, there would have been a reasonable probability of a different outcome at trial. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). Failure to prove either element is fatal to an ineffective assistance claim. *See Ledezma*, 626 N.W.2d at 142. To succeed on the first element, Stinde "must overcome the strong presumption that his counsel's actions were reasonable under the circumstances and fell within the normal range of professional competency." *State v. Smothers*, 590 N.W.2d 721, 722 (Iowa 1999). Prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Leckington*, 713 N.W.2d 208, 217 (Iowa 2006) (citation omitted).

### A. Failure to Communicate Plea Offer

Stinde contends his trial counsel failed to properly communicate the State's plea offer to him by failing to make a recommendation whether he should have accepted the offer. Stinde testified that he only met with counsel twice before trial,

but his counsel testified he met with Stinde more than two times, and that he would have met with Stinde at least every three to four weeks. The trial record shows that the offer was explained in detail to Stinde during the hearing for waiver of jury trial. During that hearing, Stinde's trial counsel detailed the terms of the offer, stating

> the sentence would be open, meaning the State could ask for consecutive—a consecutive sentence. This particular offer, the kidnapping in the second degree is twenty-five years, which he must go to prison and must serve seventy percent of it. The sexual abuse is twenty-five years, of which he must serve seventy percent. The domestic assault by strangulation is a five-year sentence with no mandatory minimums. However, by accepting this plea offer, the State would dismiss the remaining charges, but Mr. Stinde could be looking at a maximum of fifty-five years if the Court were to run them consecutively. Of that fifty-five years, on the two twenty-fives, he would have to serve 70 percent, which is about seventeen years each, so he would be looking at serving a minimum sentence of about thirty-five years, and could serve longer.

We are then left with Stinde's claim that trial counsel had a duty to take an affirmative position on the plea offer under *Padilla v. Kentucky*. *See* 559 U.S. 356, 367–75 (2010). Stinde's position is an inaccurate interpretation of *Padilla*. There is no discussion of a duty by trial counsel to give a recommendation. In *Padilla*, the Supreme Court held that trial counsel has duties to correctly inform the defendant of the consequences of a plea and to give correct advice. *Id.* at 368–69. Stinde does not allege his counsel failed in either of these respects. We find no breach of duty on Stinde's claim of failure to communicate the plea offer.

## B. Voluntary Waiver of Jury Trial

Stinde claims his waiver of jury trial was not voluntary "because he was not in the right mental state to make an informed decision" due to unprescribed medications he had accepted from other jail inmates. The PCR court found

Stinde's testimony on this issue "not remotely credible." In addition to the difficulty in smuggling the extensive cocktail of drugs of which Stinde claimed he was under the influence—Adderall, Seroquel, and Xanax, in addition to his prescribed Zoloft and Clonazepam (which were disclosed at the hearing)—Stinde engaged in a "lengthy colloquy" with the district court at his jury waiver hearing. So despite allegedly "hearing voices and hallucinations" and being under the influence of myriad drugs, Stinde was capable of engaging in discussion regarding his waiver with the trial judge without raising any concerns by the judge or counsel. And because Stinde's testimony that he was under the influence of a large combination of drugs is not credible, we cannot find that his trial counsel was ineffective in failing to recognize Stinde's purported symptoms of substance use.

We agree with the PCR court that this self-serving testimony is not convincing and defer to its credibility determination. The colloquy transcript—in which Stinde denied being under the influence of drugs—further provides evidence of Stinde's voluntary waiver. Because this claim is almost entirely premised on Stinde's PCR testimony, which was subject to the PCR court's credibility determination, we determine that trial counsel was not ineffective in permitting Stinde to waive his right to a jury trial.

## C. *Victim's Medical Records*

Lastly, Stinde argues his trial counsel was ineffective in failing to obtain the victim's medical and mental health records. Stinde argues those records would have shown the victim's post-traumatic stress disorder (PTSD) "was from prior rapes by other men and not him." And he argues that without this "serious injury,"

he could not have been convicted for first-degree kidnapping. We choose to dispose of this claim on the prejudice prong.

Even if we assume, without deciding, that Stinde's claims are true—his counsel was ineffective in failing to introduce the victim's medical records and introduction of those records would have shown the "serious injury" of PTSD was not caused by him—he would have still been convicted of first-degree kidnapping. *See* Iowa Code § 710.2 (2014). First-degree kidnapping in this case required proof that "[a]s a result of the confinement [the victim] suffered a serious injury, was intentionally subjected to torture, or was sexually abused." *Cf. id.* The district court unambiguously found evidence of "numerous incidents of sexual abuse; oral, anal, and vaginal." The district court described the following incidents of sexual abuse:

> [The victim] described numerous instances of sexual abuse that occurred over a period of hours while she was confined in the hotel room by the [Stinde]. During this same period she was physically assaulted in numerous ways including blows to the head and strangulation. These assaults left her at times dizzy and barely able to breathe. Furthermore, this ongoing abuse and assault constitutes torture. This confinement also significantly reduced the risk of detection in that it was more difficult for [the victim] to alert authorities or anyone else who could help during this lengthy period of confinement in which she was repeatedly sexually abused and beaten. . . .
>
> . . . .
>
> The Court believes that [Stinde] knew he did not have the consent of [the victim] or the authority to do any of these things. [The victim] testified that she told [Stinde] no, was crying and pleading with him to stop. Indeed, the entire context following the time from when he awoke her from her sleep shows absence of consent. The Court believes that [the victim] suffered a serious injury, was intentionally subjected to torture and was sexually abused as a result of her confinement. The State has established the elements of Kidnapping in the First Degree beyond a reasonable doubt.

Because the district court found that Stinde sexually abused the victim, a lack of serious injury would not be sufficient for overturning his first-degree kidnapping conviction. Thus, his medical records argument fails to establish any prejudice. So Stinde's ineffective assistance claim fails on this ground as well.[1]

Finding Stinde suffered no ineffective assistance of counsel, we affirm the district court's dismissal of his PCR application.

**AFFIRMED.**

---

[1] The last paragraph of Stinde's brief asserts a broad claim of structural error, citing "the multitude of errors" and urging us to "determine if meaningful advocacy did occur." He argues "trial defense counsel did not put the prosecution's case to any meaningful adversarial testing," without any further explanation. We did not find a multitude of errors, and as the trial court put it, "the evidence in this case was overwhelming." To the extent he raises this issue, we deem it waived. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) (requiring contentions to cite pertinent parts of the record and cite authority in support).